**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **BEVERLY STEWART**, | ) | |
| both individually and as Special | ) | |
| Administrator of the | ) | |
| Estate of Susan Leslie Stuckey, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **CITY OF PRAIRIE VILLAGE,** | ) | |
| **KANSAS** | ) | |
| Serve: City Clerk, | ) | |
| 7700 Mission Road | ) | |
| Prairie Village, Kansas 66208, | ) | |
| | ) | |
| | ) | Case No. 12-cv-2185 JAR/DJW |
| **POLICE CHIEF WESLEY JORDAN,** | ) | |
| in both his individual and | ) | |
| official capacity; | ) | JURY TRIAL DEMANDED |
| | ) | |
| **WES E. LOVETT,** | ) | ATTORNEY LIEN CLAIMED |
| in his individual capacity; | ) | |
| | ) | |
| **TIM SCHWARTZKOPF**, | ) | |
| in his individual capacity, | ) | |
| | ) | |
| **BYRON ROBERSON,** | ) | |
| in his individual capacity; | ) | |
| | ) | |
| **SETH MEYER,** | ) | |
| in his individual capacity; | ) | |
| | ) | |
| **JOHN OLSON,** | ) | |
| in his individual capacity; | ) | |
| | ) | |
| **DAN STEWART,** | ) | |
| in his individual capacity; | ) | |
| | ) | |

**BENJAMIN MICHEEL,**                    )
in his individual capacity              )
                                        **)**
**ADAM TAYLOR,**                         )
in his individual capacity;             )
                                        )
    all located at:  )
    7700 Mission Road )
    Prairie Village, Kansas 66208  )
                                        )
            Defendants.  )


## COMPLAINT
### (Violation of Civil Rights Under U.S. Constitution)

Plaintiff Beverly Stewart, suing individually in her own right and as Special

Administrator of the Estate of Susan Leslie Stuckey, demands a jury trial on all claims

stated in this Complaint.  For her causes of action against the Defendants City of Prairie

Village, Byron Roberson, Wes Lovett, Wesley Jordan, Seth Meyer, John Olson, Dan

Stewart, Benjamin Micheel, and Adam Taylor, Plaintiff states as follows:

### PRELIMINARY STATEMENT AND INTRODUCTION

1.  This civil rights action is brought by Plaintiff Beverly Stewart, individually and

as Special Administrator of the Stuckey estate, for monetary damages for the violation of

Susan L. Stuckey's civil rights under the Fourth and Fourteenth Amendments of the

Constitution of the United States of America, and further, for the violation of Ms.

Stewart's civil rights under the First and Fourteenth Amendments of the Constitution of

the United States of America.

2.  On the morning of March 31, 2010, Susan L. Stuckey was alone in her apartment at 4103 W. 93rd Terrace, Apartment 212, Prairie Village, Kansas.  Ms. Stuckey suffered from mental health problems, including severe depression and post-traumatic stress disorder, and her mental state had greatly deteriorated in the previous days.  She made several 911 calls to the Overland Park, Kansas and Leawood, Kansas Police Departments demanding that the police bring her cigarettes and stating that the police should be armed, because she was going to commit "suicide by cop."  Dispatchers of the respective police departments conveyed the content of the calls to a Prairie Village, Kansas police dispatcher, who sent officers to Ms. Stuckey's apartment.

3.  Various members of the Prairie Village Police Department and the Johnson County Mental Health Center had conducted welfare checks on Ms. Stuckey earlier in the month.  Ms. Stuckey's mental health problems were well known to the Prairie Village Police Department.

4.  Ms. Stuckey would not allow the officers to enter her apartment and would only communicate with them by yelling through the front door to her apartment.  Distraught and agitated, she barricaded her front door and repeatedly said she would kill herself. The Prairie Village Critical Incident Response Team (CIRT) – under the direction of Team Leader Sergeant Byron Roberson and supervisor Captain Wes Lovett – was sent to the apartment.  Members of the team surrounded Ms. Stuckey's building and positioned snipers who could see into the apartment.  Team members were clothed in riot gear and

protective helmets.

5.   Within minutes of the CIRT team's arrival, Captain Lovett ordered the CIRT team to enter Ms. Stuckey's apartment – without a warrant –  and forcibly remove her so that she could be taken to the University of Kansas Medical Center and involuntarily committed to a psychiatric ward.  The team used a battering ram to knock down the front door, and Sergeant Roberson – wearing body armor and a helmet – entered the apartment. Ms. Stuckey purportedly swung a baseball bat, and Sergeant Roberson and Officer Olson quickly disarmed her.  Roberson and Officer Taylor attempted to shoot Ms. Stuckey with Tasers.  Ms. Stuckey retreated into her living room, where Roberson shot Ms. Stuckey with his gun three times.  One of the bullets entered her back.  Ms. Stuckey died at the scene.

6.   Numerous other officers were in the apartment hallway or foyer when the shooting occurred.  They took no steps to stop Roberson from entering in an unsafe manner that was contrary to the team's protocol, nor did they offer proper assistance to Roberson or attempt to use less than lethal means to place Ms. Stuckey under their control.  They decided to forego a mental health professional's offer of assistance and never contacted Ms. Stuckey's mother or a member of Ms. Stuckey's family for assistance.

7.  Plaintiff Beverly Stewart, Ms. Stuckey's mother and Special Administrator of her estate, seeks damages for Defendants' reckless and intentional actions that violated

Ms. Stuckey's civil rights and resulted in her death.  Plaintiff Stewart also seeks damages for Defendants' violation of Ms. Stewart's right to familial association.

## JURISDICTION

8.  Jurisdiction is conferred by 28 U.S.C. § 1331 and 1343, which provides for original jurisdiction of this Court in suits based respectively on federal questions and authorized by 42 U.S.C. § 1983, to redress the deprivation under color of state law, statute, ordinance, regulation, custom or usage of any right, privilege, or immunity secured by the Constitution of the United States or by any act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

9.  Plaintiff's actions for damages are authorized by:

 a.  42 U.S.C. § 1983, which provides for redress for the deprivation under color of any statute, ordinance, regulation, custom or usage of any state or territory of any rights, privileges or immunities secured to all the citizens or persons within the jurisdiction of the United States;

b.  the First, Fourth, and Fourteenth Amendments of the United States Constitution; and

c.  42 U.S.C. § 1988, which authorizes Plaintiff's application for attorneys' fees and provides that a court may award a reasonable attorneys' fee as part of costs in any action or proceeding to enforce a provision of 42 U.S.C. § 1983.

10.  Venue is proper in the United States District Court for the District of Kansas

under 28 U.S.C. § 1391(a)(2), as the events or omissions giving rise to Plaintiff's claims occurred in Prairie Village, Johnson County, Kansas.

## THE PARTIES

11.   Plaintiff Beverly Stewart is presently, and was at all times relevant to this Complaint, a citizen of Overland Park, Johnson County, Kansas.  She is the natural mother of Susan Stuckey and a Special Administrator of the Estate of Susan Stuckey.

12.   Defendant City of Prairie Village, Kansas, was created by, and established under, the laws of the State of Kansas.  It is authorized to sue or be sued in its corporate name.

13.   Defendants Roberson, Lovett, Jordan, Schwartzkopf, Meyer, Olson, Stewart, Micheel, and Taylor, at all times relevant to the conduct alleged in this Complaint, were sworn law enforcement officers with the Prairie Village, Kansas Police Department. They are sued in their individual capacities.

14.   Police Chief Wesley Jordan is sued in his official and individual capacity and is liable as supervisor and final policymaker for the Prairie Village Police Department.

15.   All of the Defendants, at all times material to this Complaint, acted under color of state law.

## FACTUAL BACKGROUND

16.   Susan L. Stuckey lived in the Kenilworth Apartments at 4103 W. 93rd Terrace, Prairie Village, Kansas.  Ms. Stuckey suffered from mental health problems, including

6

severe depression and post-traumatic stress disorder, and received Social Security disability.  Ms. Stuckey was temporarily occupying the corporate suite, while her apartment was being cleaned following an accidental cooking fire that caused soot and smoke damage.

17.  During March of 2010, Ms. Stuckey's behavior became more erratic and her mental problems were much more obvious. When Ms. Stuckey did not vacate the corporate suite by the date specified, her landlord began eviction proceedings.  Ms. Stuckey had a court hearing scheduled for April 1, 2010.

18.  In March of 2010, Ms. Stuckey made frequent calls to the Prairie Village Police Department.  Police officers and employees of the Johnson County Mental Health Center made several welfare checks on Ms. Stuckey.  Ms. Stuckey's contacts with the police were not violent.  The police were aware of her mental health problems and the eviction proceedings.

19.  On the morning of March 31, 2010, Ms. Stuckey was agitated and distraught. Ms. Stuckey made several 911 calls, stating that she wanted the police to kill her, she would give them a reason to her kill her, and it would be "suicide by cop."

20.  Fifteen or more Prairie Village police officers, including Captain Wes Lovett, who had overall tactical command of the scene, went to Ms. Stuckey's apartment.

21.  The police informed the Johnson County Mental Health Center that they planned to remove Ms. Stuckey from her apartment.  A staff member of the mental health

center offered to send a counselor to Ms. Stuckey's apartment, but was told by an officer that it was not necessary. The staff member said he would have a counselor available if needed. Later, Defendant Lovett would claim that Johnson County Mental Health Center did not have the resources to help Ms. Stuckey and that the center's legal counsel had directed the staff not to go to her apartment.

22. The police evacuated the apartment building, with the exception of one woman, and the fire department and emergency medical personnel were on the scene. Officers formed a perimeter around the building and snipers were positioned where they could see into the apartment. An officer with a beanbag shotgun was present. An officer with flash bang devices was also present.

23. Ms. Stuckey told the officers, and the snipers could see, that she had barricaded her front door.

24. Captain Lovett contacted Sergeant Byron Roberson and told him to mobilize the Critical Incident Response Team (CIRT). Defendant Roberson was the Team Leader of CIRT. CIRT Team 1 was comprised of Defendants Roberson, Olson, Stewart, and Meyer. A second CIRT team was also at the scene.

25. Defendant Lovett wanted officers to enter Ms. Stuckey's apartment before Defendant Roberson and the CIRT team arrived. Captain Tim Schwartzkopf contacted Police Chief Wes Jordan, briefed Jordan about the unfolding events, and informed him of Lovett's concerns. Chief Jordan informed Schwartzkopf, who told Lovett, that there had

been a fire in the apartment Ms. Stuckey previously occupied.  Schwartzkopf obtained Jordan's approval to enter the apartment.

26.  Although Defendant Lovett was Roberson's superior officer, Defendant Roberson knew that Lovett had limited CIRT experience, and Roberson told Lovett to wait.  Before he arrived, Defendant Roberson contacted an officer on the scene and directed him to attempt to calm Lovett and make him slow down.  Defendant Roberson believed that if Ms. Stuckey was going to harm herself or burn the building down, as Lovett said he feared, she would have done it already.

27.  Defendant Roberson formulated an operation plan to enter the apartment and remove Ms. Stuckey.  The operation plan did not include any provision for the use of methods – further negotiation, the use of chemical munitions, use of non-lethal weapons – other than forcible entry and removal.  Defendant Lovett and Captain Tim Schwartzkopf approved the plan.

28.  The Prairie Village Police Department's policy provides that negotiations are the main tactic to employ in barricade situations.  Other options include the "creation of an uncomfortable interior environment by use of chemical munitions to influence the suspect to come out of his/her stronghold" and tactical entry.  The policy provides that "[t]actical entry may be used if all other means of persuasion are exhausted or fail."

29.  Within ten minutes of the CIRT team's arrival, Defendant Lovett declared that negotiations with Ms. Stuckey had failed.  Officers had been at the apartment complex for

approximately two hours.  An officer trained in hostage negotiation was on the scene, but Lovett felt that the officer was too busy controlling the scene to talk to Ms. Stuckey. Officer Taylor, who had no training in negotiation, was directed to speak with Ms. Stuckey.

30.  Ms. Stuckey told Taylor that she wanted to talk to her mother and her brothers. She gave Taylor her mother's name and telephone number.  Taylor passed this information on to another officer.  Later, Taylor told Stuckey that the police could not contact her mother and that her mother would not reply back.  Ms. Stuckey's mother, Beverly Stewart, was at home the morning of March 31, 2010.  She did not receive a phone call from the police.  Had Ms. Stewart been contacted, she immediately would have gone to Ms. Stuckey's apartment and talked to her.  The only contact Ms. Stewart had with the police was after the shooting when they went to her home to notify her of Ms. Stuckey's death.

31.  Although the police did not have a warrant, Defendant Lovett ordered Defendant Roberson and his team to enter the apartment.  Defendant Lovett ordered Taylor to inform Ms. Stuckey that she had two minutes to exit her apartment or the police were going to remove her.

32.  The officers knew that Ms. Stuckey had a baseball bat.  They heard her banging the bat against her front door and expected her to be near the door when they entered.

10

33. Defendants Roberson, Olson, Stewart, Meyer, Taylor and Micheel positioned themselves outside Ms. Stuckey's front door in the hallway. Officer Meyer breached the door using a battering ram and moved the door out of the way. Officer Roberson and Olson entered the foyer of the apartment and saw Ms. Stuckey swinging a baseball bat. Roberson and Olson took the bat from her. Roberson also took a broom handle from her. Roberson fired his taser twice at Ms. Stuckey. Officer Taylor fired his taser once.

34. According to Roberson, Ms. Stuckey grabbed a knife and held it as if she was going to throw it at him. Roberson shot Ms. Stuckey three times with his handgun. According to Roberson, the knife bounced off his body armor and fell to the floor.

35. An audio recording from a patrol unit at the scene, however, indicates that Roberson told Stuckey, "don't pick up that knife." Two seconds later, three shots were fired.

36. All three shots struck Ms. Stuckey. Crime scene reports indicate that bullet impacts were observed in the north living room wall, through the open door of the bedroom, and on the refrigerator in the kitchen. The trajectories of the bullets and the blood spatter found on the north and east living room walls show that Roberson and Stuckey were in the living room, not the foyer, when Roberson shot and killed Ms. Stuckey.

37. Ms. Stuckey died at the scene. An autopsy showed that Ms. Stuckey was shot in the neck, her right forearm, and her back. There was no stippling or soot around the

wounds.  The shots were fired from a "distant range."  Ms. Stuckey had contusions on her thorax, abdomen, arms, and legs.  Four taser probes were removed from her shirt.  They had not pierced her skin.

38. The Officer Involved Shooting Investigation Team (OISIT) investigated the shooting.  Johnson County, Kansas District Attorney Stephen Howe cleared Defendant Roberson of criminal wrongdoing.  The OISIT investigation did not address whether Defendants made operational errors in forcibly entering Ms. Stuckey's apartment or whether Defendants were adequately trained and supervised.

39.  The actions of Defendants Lovett and Roberson grossly violated widely accepted law enforcement standards on crisis intervention and the use of force.  Defendants, knowing that Ms. Stuckey was mentally ill and in crisis, failed to use a trained negotiator or trained mental health care professional to communicate with Ms. Stuckey, failed to use chemical munitions, and needlessly escalated the situation by setting a two-minute time limit and by forcibly entering Ms. Stuckey's apartment.

40.  The Defendants' grossly mismanaged and reckless attempt at crisis intervention and the use of excessive force reflect a failure to properly train, guide, and supervise the police department's officers.  Chief Wes Jordan is the final policymaker for the department and is responsible for the failure to properly train, guide, and supervise his officers.  He is also responsible for his direct role in supervising the reckless actions of his subordinates.

41.  All Defendants knew or should have known that their conduct violated clearly established statutory or constitutional rights.  All Defendants acted under the color of state law.

42.  As a result of Defendants' wrongful actions, Ms. Stuckey suffered extreme terror, severe pain, emotional trauma, and death.

## Count I

### Claim Against All Defendants for Unconstitutional Use of Excessive Force in Violation of the Fourth and Fourteenth Amendments and 42 U.S.C § 1983

Plaintiff Stewart realleges the foregoing and further states as follows:

43.  Defendant Roberson, acting under color of state law, intentionally and/or recklessly shot and killed Ms. Stuckey.  The force employed was objectively unreasonable.  Roberson had disarmed Ms. Stuckey and she was retreating into her living room where Roberson shot her three times, including once in the back.

44.  The actions of all Defendants, acting individually and/or in concert, were wanton and malicious and subjected Ms. Stuckey to an unreasonable seizure in violation of her rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.  Defendants actions deprived Ms. Stuckey of her life, in violation of her substantive right to life under the Due Process Clause of the  Fourteenth Amendment.

45.  The actions of the Defendants proximately and directly caused Ms. Stuckey's injuries and death.

46.  At all times relevant to this Complaint, Defendants were employees of the City

of Prairie Village.  Defendants Roberson, Lovett, Olson, Stewart, Meyer, Taylor, and

Micheel acted under the supervision of Defendant Jordan.

47.  Defendant Jordan improperly and recklessly supervised his officers, resulting

in the death of Ms. Stuckey.  In fact, he recklessly and needlessly escalated the situation

and failed to provide proper leadership and supervision consistent with the police

department's policies and nationally recognized law enforcement standards.  Defendant

Jordan failed to provide Defendants with adequate training and supervision, directly

resulting in Ms. Stuckey's injuries and death.

## Count II

### *Monell* Claim Under 42 U.S.C. § 1983 Against Defendant Jordan, in his Official Capacity, and Against the City of Prairie Village

Plaintiff Stewart realleges the foregoing and further states as follows:

48.  Police Chief Jordan is the final policymaker for the Prairie Village Police

Department and, thus, for the City of Prairie Village in matters delegated or entrusted to

him.

49.  Both before and at the time of the events alleged in this Complaint, the Prairie

Village Police Department had policies, practices, customs and procedures which

operated to deprive Ms. Stuckey of her constitutional rights under the Fourth and

Fourteenth Amendments.

50.  Police Chief Jordan and the City of Prairie Village are accountable under 42

U.S.C. § 1983, because they established policies and practices that were intended to and

14

did encourage, endorse and permit their agents and employees to violate the constitutional rights of Ms. Stuckey and other similarly situated persons.  At a minimum, Chief Jordan and the City of Prairie Village were deliberately and/or recklessly indifferent to such constitutional violations.

51.  The unconstitutional policies, practices, customs and procedures of Chief Jordan and the City of Prairie Village include, but are not limited to:

a.  A policy, practice, custom or procedure of failing to properly train and supervise officers to avoid the inappropriate use of force;

b.  A policy, practice, custom or procedure of failing to adequately train and supervise officers in the techniques of properly responding to critical incidents involving suicidal and mentally ill persons;

c.  The practice of using deadly force without regard to the need for the use of such force;

d.  A policy on the use of deadly force that fails to provide adequate guidance to officers;

e.  A practice or custom of not investigating whether an officer's use of force is justified;

f.  A practice or custom of not investigating whether CIRT operation plans comply with reasonable police standards;

g.  A practice or custom of being deliberately indifferent to constitutional

15

violations committed by law enforcement officers;

    h.  A practice or custom of not following the police department's written policies on the use of force and CIRT operations.

    52.  Chief Jordan and the City of Prairie Village established, maintained, and used the policies, practices, customs, and procedures described above before and during the forcible entry into Ms. Stuckey's home and during the shooting and killing of Ms. Stuckey.

    53.  These policies, practices, customs and procedures, as described above, were implemented intentionally and/or recklessly to deprive citizens, including Ms. Stuckey, of their constitutional rights and were a direct and proximate cause of the constitutional violations and injuries set forth in this Complaint.

    54.  The constitutional violations committed by Defendants arose from circumstances constituting a usual and recurring situation.

    55.  Chief Jordan's and the City of Prairie Village's inadequate training and supervision of their police officers directly caused the violations of Ms. Stuckey's constitutional rights under the Fourth and Fourteenth Amendments.

    56.  Chief Jordan's and the City of Prairie Village's custom and practice of failing to enforce what policies did exist to protect Ms. Stuckey, and other citizens like her, was a direct and proximate cause of the constitutional violations and injuries set forth in this Complaint.

**Count III**

**Claim Under 42 U.S.C. § 1983 Against Defendants Lovett, Schwartzkopf, and Jordan, Whose Acts and Omissions as Defendant Roberson's Supervisors Resulted in the Violation of Susan Stuckey's Constitutional Rights**

57.  Defendant Roberson used excessive force in entering Ms. Stuckey's home and shooting her three times.  The conduct of the other officers contributed to the excessive force by their failure to follow departmental policies and by failing to protect Susan Stuckey from grossly unreasonable and excessive force.

58.  Defendants Lovett, Schwartzkopf, and Jordan intentionally and purposefully, through their own individual actions, caused the violation of Susan Stuckey's constitutional right to be free from unreasonable searches and seizures under the Fourth Amendment to the Constitution of the United States and the violation of her substantive right to life under the Fourteenth Amendment to the Constitution of the United States.  By approving an operational plan that made no provision for a mental health professional or less than lethal means of apprehension, and by failing to ensure that the officers would follow policies and protocol, Defendants recklessly and intentionally instigated events leading to the use of excessive force and Ms. Stuckey's death.

59.  As a direct result of Defendant Lovett's, Schwartzkopf's, and Jordan's acts and omissions, Ms. Stuckey suffered damages.

60.  Defendants Lovett, Schwartzkopf, and Jordan acted under color of state law.

**Count IV**

**Claim Under 42 U.S.C. § 1983 Against Defendants Meyer,
Olson, Stewart, Taylor, and Micheel for Failure to Intercede
and Protect Susan Stuckey from Defendant Roberson's Excessive Force**

Plaintiff Stewart realleges the foregoing and further states as follows:

61.  Defendant Roberson used excessive force in entering Ms. Stuckey's home and shooting her three times.

62.  Defendants Meyer, Olson, Stewart, Taylor, and Micheel observed and had reason to know that Defendant Roberson was using excessive force, in violation of Ms. Stuckey's right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution.  Defendants Meyer, Olson, Stewart, Taylor, and Micheel had an affirmative duty to intervene to prevent Defendant Roberson's use of excessive force.

63.  The harm to Ms. Stuckey was preventable, and Defendants Meyer, Olson, Stewart, Taylor, and Micheel had a realistic opportunity to intervene and prevent the harm from occurring.

64.  Defendants Meyer, Olson, Stewart, Taylor, and Micheel failed to intervene and protect Ms. Stuckey from Defendant Roberson's violation of her civil rights under the Fourth and Fourteenth Amendments.

65.  Defendants Meyer, Olson, Stewart, Taylor, and Micheel acted under color of state law.

18

66. As a direct result of Defendants acts and omissions, Ms. Stuckey suffered damages.

## Count V

### Claim Under 42 U.S.C. § 1983 Against All Defendants For Intentional Deprivation of Beverly Stewart's Right to Familial Association Under the First Amendment and the Due Process Clause of the Fourteenth Amendment

Plaintiff Stewart realleges the foregoing and further states as follows:

67. Defendants intentionally interfered with Beverly Stewart's constitutionally protected liberty interest in familial association with her daughter, Susan L. Stuckey, in violation of Ms. Stewart's rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment.

68. Defendants knew that Beverly Stewart was Susan Stuckey's mother. Defendants' acts and omissions were directed at the mother/daughter relationship with knowledge that their acts and omissions would adversely affect that relationship.

69. Defendants acted under color of state law.

70. Beverly Stewart suffered damages as a direct result of Defendants' intentional interference with her relationship with her daughter.

## CLAIM FOR DAMAGES

71. As to Counts I - IV, the wrongful actions of Defendants deprived Ms. Stuckey of her civil rights under the Fourth and Fourteenth Amendments.

72. As to Counts I - IV, the estate of Susan L. Stuckey is entitled to compensatory

damages for the terror, emotional pain and suffering, and physical pain and suffering Ms. Stuckey suffered before death. The estate is also entitled to all expenses incurred for cremation, burial, and memorial services.

73. As to Counts I-IV, Defendants' actions were deliberate, reckless, wanton, malicious and/or cruel, which justifies an award of punitive damages.

74. As to Count V, Defendants' wrongful actions deprived Ms. Stewart of her civil rights under the First and Fourteenth Amendments.

75. As to Count V, Ms. Stewart is entitled to damages for her emotional pain and suffering.

76. As to Count V, Defendants' action were intentional, malicious and/or cruel, which justifies an award of punitive damages to Ms. Stewart.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

1. That this Court assume jurisdiction of this cause to determine this controversy and set this case for hearing on the merits;

2. The award of compensatory damages to Plaintiff Stewart as Special Administrator for the estate of Susan L. Stuckey for the violation of Ms. Stuckey's civil rights in the amount of $1,000,000.

3. The award of compensatory damages to Plaintiff Stewart individually for the violation of Ms. Stewart's civil rights in the amount of $1,000,000.

4.  The award of punitive damages against Defendants, jointly and severally, in the amount of $2,000,000.

5.  That this Court, pursuant to 42 U.S.C. § 1988, allow the Plaintiff costs, expenses and attorneys' fees, and also grant such alternative relief as may seem to the Court, just, proper, and equitable.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial, pursuant to the Seventh Amendment to the Constitution of the United States, as to all claims for damages.

## PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas, as the place of trial.


Respectfully submitted,


/s/ Rebecca L. Kurz
Rebecca L. Kurz, KS Bar #23490
Cheryl A. Pilate, KS Bar #14601
Morgan Pilate LLC
142 N. Cherry
Olathe, KS 66061
Telephone: 913-829-6336
Facsimile: 913-829-6446
rkurz@morganpilate.com
cpilate@morganpilate.com
Attorneys for Plaintiff